Thomas M. DeMicco (TD 5037)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
3 Gannett Drive
White Plains, NY  10604-3407
Telephone:    914-323-7000
Facsimile:    914-323-7001
thomas.demicco@wilsonelser.com

*ATTORNEYS FOR DEFENDANT*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NIRVANA INTERNATIONAL, INC., <br><br>            Plaintiff, <br><br> vs. <br><br> ADT SECURITY SERVICES, INC., <br><br>            Defendants. | Case No.  11-CIV-8738 <br><br> **MEMORANDUM OF LAW IN SUPPORT OF ADT SECURITY SERVICES, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.  STATEMENT OF FACTS ............................................................................................. 2

    A.  Nirvana's Allegations ........................................................................................... 2

        1.  The Small Business Contract and "Agreement" ..................................... 2

        2.  The Burglary ............................................................................................. 4

        3.  The Forgery .............................................................................................. 4

    B.  Nirvana's Causes of Action .................................................................................. 5

II.  LEGAL STANDARD ..................................................................................................... 6

III.  ARGUMENT ................................................................................................................... 7

    A.  Nirvana's negligence claims fail because contract-based duties do not give rise to separate tort duties. ............................................................................................ 7

    B.  Nirvana's "Forgery/Fraud" claim fails because forgery is not an independent cause of action and Nirvana failed to adequately plead reliance. ......................... 8

    C.  Nirvana's breach-of-contract claim fails to the extent Nirvana's requested relief exceeds $1,000. .................................................................................................. 10

        1.  Nirvana accepted the Small Business Contract in its entirety because it received the benefit of that contract and failed to timely communicate to ADT its alleged rejection of certain contractual terms. ............................ 11

        2.  Because the Terms and Conditions apply, they limit Nirvana's recoverable damages. .................................................................................................. 13

IV.  CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Amusement Indus., Inc. v. Stern,*
  786 F. Supp. 2d 758, 775 (S.D.N.Y. 2011) .................................................................................. 9

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937, 1949 (2009) ....................................................................................................... 6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................................................... 6

*Brown v. Wyckoff Hgts. Med. Ctr.,*
  811 N.Y.S.2d 570, 571 (N.Y. App. Div. 2006) ........................................................................... 8

*Children's Surgical Found., Inc. v. Nat'l Data Corp.,*
  121 F. Supp. 2d 1221, 1223 (N.D. Ill. 2000) ............................................................................. 14

*Clemens Realty, LLC v. N.Y. City Dep't of Educ.,*
  850 N.Y.S.2d 172, 173, 47 A.D.3d 666, 667 (N.Y. App. Div. 2008) ......................................... 8

*Eurycleia Partners, LP v. Seward & Kissel, LLP,*
  910 N.E.2d 976, 979 (N.Y. 2009) ................................................................................................ 9

*Filanto v. Chilewich Int'l Corp.,*
  789 F. Supp. 1229 (S.D.N.Y. 1992) ........................................................................................... 12

*Florence v Merchants Cent. Alarm Co. Inc.,*
  51 N.Y.2d 793 (1980) ................................................................................................................ 14

*Gildepath Holding B.V. v. Spherion Corp.,*
  590 F. Supp. 2d 435, 459 (S.D.N.Y. 2007) .................................................................................. 9

*Luckett v. Bure,*
  290 F.3d 493, 497 (2d Cir. 2002) ................................................................................................. 9

*Miller v. New York City Health & Hosp. Corp.,*
  No. 00-civ-140, 2005 WL 2022016  (S.D.N.Y. Aug. 22, 2005), *aff'd,*
  198 F. App'x 87 (2d Cir. 2006) .................................................................................................... 9

*Old Republic Nat'l Title. Ins. Co. v. Cardinal Abstract Corp.,*
  790 N.Y.S.2d 143, 145, 14 A.D.3d 678, 680 (N.Y. App. Div. 2005) ......................................... 8

*Register.com, Inc. v. Verio, Inc.,*
  356 F.3d 393, 403 (2d Cir. 2004) ........................................................................................ 12, 13

*Sargent v. N.Y. Daily News, L.P.,* 840 N.Y.S.2d 101, 103, 42 A.D.3d 491, 493
  (N.Y. App. Div. 2007) ................................................................................................................. 8

*Schuh v. Druckman & Sinel, LLP,*
  No. 07 Civ. 366, 2008 WL 542504 (S.D.N.Y. Feb. 29, 2008) .................................................... 9

*Sommer v. Fed. Signal Corp.,*
  79 N.Y.2d 540, 553-54 (1992) ................................................................................................... 14

*Vigilant Ins. Co. v. ADT,*
  No. 10 Civ. 3066, 2011 WL 855874 (S.D.N.Y. Mar. 9, 2011) .................................................... 7

*Ziemba v. Wezner,*
  366 F.3d 161, 163 (2d Cir. 2004) ................................................................................................. 6

**Other Authorities**

Restatement (Second) of Contracts § 69(1)(a) (1981) ................................................................... 12

**Rules**
Fed. R. Civ. P. 8(a)(2) .................................................................................................................... 6
Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 6, 14

With ADT's consent, Nirvana amended its Complaint to deny that it entered into a Small Business Contract with ADT that limits Nirvana's recovery. Yet Nirvana apparently contends that ADT entered into a commercial relationship with Nirvana in the absence of any written document defining the responsibilities of the parties to one another. Nirvana never explains why ADT provided alarm-monitoring services absent a defined, written contract typical of relationships between commercial entities. Instead, Nirvana seeks to expend the Court's (and the parties') resources arguing its relationship with ADT does not arise from the six-page Small Business Contract that it signed. Realistically viewed, this effort evidences an artful litigant's attempt around a bargain's unfavorable terms while concurrently imploring the Court to hold ADT to its bargain. Contract law does not work that way. New York law and judicial economy accordingly require that the Court dismiss this case.

Nirvana alleges that ADT failed to perform its contractual obligations of properly installing and monitoring security equipment on Nirvana's premises. Nirvana also alleges that ADT forged a Nirvana representative's signature on the Terms and Conditions page of the parties' Small Business Contract, rendering inapplicable certain clauses that limit ADT's liability. As a result, Nirvana asserts claims against ADT for breach of contract, negligence, gross negligence, and "forgery/fraud".

Nirvana's claims fail as a matter of law. Nirvana's negligence-based claims fail because, as the Court recently held, ADT has no common-law duty to install and monitor security equipment. Nirvana's "forgery/fraud" claim fails because New York does not recognize an independent cause of action for forgery. To the extent Nirvana intended to allege a fraud claim, that claim fails because Nirvana did not rely on ADT's alleged misrepresentation.

Finally, Nirvana's breach-of-contract claim fails to the extent Nirvana's requested relief exceeds $1,000. It makes no difference that Nirvana alleges it did not sign the final page of the Small Business Contract, which contains the limitation-of-liability clause. Nirvana knew of and read the Terms and Conditions. It failed to timely communicate to ADT its alleged rejection of those terms. And it permitted ADT to install and monitor security equipment in Nirvana's premises. Under these pleaded facts, the Small Business Contract applies and limits Nirvana's recoverable damages.

With ADT's consent, Nirvana amended its Complaint to attempt to fix pleading and legal deficiencies that ADT noted in its first Motion to Dismiss (Docs. 6, 7). But as demonstrated below, the law – not artful pleading – dictates the appropriate result. ADT therefore requests that the Court dismiss Nirvana's negligence, gross-negligence, and "forgery/fraud" claim with prejudice and limit Nirvana's recoverable damages to the contractually agreed-upon amount.

## I.   STATEMENT OF FACTS

### A.   Nirvana's Allegations

#### 1. *The Small Business Contract and "Agreement"*

In May 2010, Nirvana contacted ADT about the possibility of ADT installing and monitoring a security system on Nirvana's premises. Am. Compl. ¶ 19 (Doc. 10). On May 17, 2010, an ADT representative met with Nirvana's representative regarding Nirvana's interest in ADT's security equipment and services. *Id.* at ¶ 23. At that meeting, ADT presented Nirvana's representative with a six-page form titled "Small Business Contract." *Id.* at ¶ 24. Nirvana attached to the Amended Complaint Nirvana's copy of the Small Business Contract's first three pages as Exhibit A and last three pages as Exhibit B. *Id.* at ¶¶ 26, 34; *see also* Exs. A, B to Am.

Compl.[1]  During the May 17, 2010 meeting, Nirvana's representative signed and initialed the first three pages of the Small Business Contract, which Nirvana alleges created a "binding agreement between ADT and Nirvana." *Id.* at ¶ 26. Nirvana refers to this "binding agreement" as the "Agreement" throughout its Amended Complaint.  According to Nirvana, the "Agreement" required ADT to "provide alarm monitoring and notification services for Nirvana." *Id.* at ¶ 27. Specifically, Nirvana alleges that ADT agreed:

> (i) to install an alarm monitoring and notification system in Nirvana's premises such that in the event of a burglary, including but not limited to a burglary committed via entry through the ceiling in Nirvana's back office, alarm security sensors incorporated in ADT's system would be triggered and a signal would be promptly transmitted to ADT's central station signal receiving center; and (ii) ADT would promptly thereafter notify both Nirvana and NYPD of same.

*Id.* at ¶ 30.

The final three pages of the Small Business Contract contain the header "Important Terms and Conditions." *Id.* at ¶ 34. Page six of the Small Business Contract contains a clause that "limits ADT's liability to $1,000 in the event its alarm system failed." *Id.* at ¶ 81; Small Business Contract at p. 6, ¶ E (Exs. A, B to Am. Compl.) (Doc. 10).[2] Nirvana alleges that its representative did not sign the last page of the Terms and Conditions on the signature line below the words "Customer Acceptance." *Id.* at ¶ 36. Instead, Nirvana's representative, Mr. Sharma,

---

[1]  For purposes of this motion, all references to the "Small Business Contract" refer to Exhibits A and B of Nirvana's Amended Complaint.

[2]  More specifically, the limitation-of-damages clause provides:

> **IF NOTWITHSTANDING THE PROVISIONS OF THIS SECTION E, ADT IS FOUND LIABLE FOR LOSS, DAMAGE OR INJURY UNDER ANY LEGAL THEORY DUE TO A FAILURE OF THE SERVICES, SYSTEM OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHOEVER IS GREATER, AS AGREED UPON DAMAGES AND NOT AS A PENALTY, AS CUSTOMER'S SOLE REMEDY.**

Small Business Contract at p. 6, ¶ E (emphasis in original) (Exs. A, B to Am. Compl.).

told ADT's representative that he would not agree to the Terms and Conditions "without first reviewing same and determining that they were acceptable to him." *Id.* at ¶ 39. Later, Mr. Sharma allegedly determined that he would not accept the Small Business Contract's Terms and Conditions. *Id.* at ¶ 42. Nowhere in Nirvana's original and Amended Complaints does Nirvana allege that it told ADT that Nirvana would not agree to the Small Business Contract's Terms and Conditions.

On June 8, 2010, an ADT representative installed Nirvana's alarm monitoring and notification system at Nirvana's premises. *Id.* at ¶ 45. Since then, Nirvana has paid ADT a $44 monthly monitoring fee. *Id.* at ¶ 31.

### 2.  *The Burglary*

On December 4, 2010, unknown individuals burglarized Nirvana's jewelry store and stole approximately $2.4 million in personal property. *Id.* at ¶¶ 48-59, 62-63. Nirvana reviewed the "buffer history" on the ADT alarm system, which showed that there was "no indication in such history of any alarm going off at Nirvana's premises during the December 4th burglary." *Id.* at ¶ 75. Because the alarm system did not trigger, ADT's central monitoring station did not receive a signal from Nirvana's device and as a result, ADT did not notify the police or Nirvana's representative of the burglary. *Id.* at ¶¶ 60, 109-10.

### 3.  *The Forgery*

After the burglary, ADT told Nirvana that ADT was not responsible for Nirvana's losses resulting from the burglary because Nirvana's representative signed page six of the Small Business Contract, which contains a clause that limits ADT's liability. *Id.* at ¶ 80. Unlike Nirvana's Customer Copy of the Small Business Contract, ADT's Central Storage Copy contains a Nirvana representative's signature on page six. *Id.* at ¶ 85. Nirvana's representative, however, did not sign or initial page six on any copy of the Small Business Contract. *Id.* at ¶ 86.

Upon Nirvana's receipt of the Central Storage Copy, Nirvana retained forensic document analysts to analyze whether Nirvana's representative, Mr. Sharma, signed and initialed page six of the Central Storage Copy. *Id.* at ¶ 91. The analysts determined that Mr. Sharma "probably did not write" the signature or initials on the Central Storage Copy. *Id.* at ¶ 94. Someone at ADT therefore "created the Purported Signature and the Purported Initials." *Id.* at ¶ 98.

### B.   Nirvana's Causes of Action

Nirvana asserts causes of action against ADT for breach of contract, negligence, gross negligence, and "forgery/fraud." Nirvana contends that ADT breached the "Agreement by failing to provide the alarm monitoring and notification services that it agreed to provide to Nirvana pursuant to the Agreement." *Id.* at ¶ 102.

To support its negligence claim, Nirvana alleges that ADT breached a duty of care it owed to Nirvana by failing to ensure that

> (i) all equipment in Nirvana's premises used by ADT in providing such services was properly installed and functioning; (ii) all equipment in Nirvana's premises used by ADT in providing such services was properly connected to ensure transmission to ADT's central monitoring station in the event that one of the alarm sensors at Nirvana's premises was triggered during a burglary; (iii) the alarm sensors installed in Nirvana's back office would be triggered in the event that burglars entered Nirvana's back office from above through the ceiling; and (iv) in the event that the triggering of the alarm system was transmitted to ADT's central monitoring station, both Nirvana and the NYPD would be promptly notified.

*Id.* at ¶¶ 106-107.

To support its "forgery/fraud" claim, Nirvana alleges that as a result of the forgery, Nirvana suffered damages in the form of "costs incurred in addressing these forgeries, including legal fees relating to the forgeries and all monies paid to the Lesnevich Firm for the analysis of same." *Id.* at ¶ 121.

## II. LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all well-pleaded, material allegations must be taken as true, and the motion may be granted if the moving party is clearly entitled to judgment. *See Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). As the Supreme Court recently clarified, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court further expounded on the "two working principles" that underlie the *Twombly* decision. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to a state a claim. *Id.* Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n] that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Further, the general rule is that a district court should consider a motion brought under Rule 12(b)(6) by looking only to the allegations on the face of the complaint. In certain circumstances, however, the court may consider documents other than the complaint in ruling on a motion to dismiss. Courts may consider documents attached to the complaint. Here, Nirvana attached to the Amended Complaint Nirvana's copy of the Small Business Contract's first three pages as Exhibit A and the last three pages as Exhibit B. Am. Compl. ¶¶ 26, 34 (Doc. 10).

Nirvana also alleges that it entered into a contractual agreement with ADT. *Id.* at ¶ 26. Because the Small Business Contract is essential to Nirvana's claim, the Court should consider the Small Business Contract in this motion to dismiss.

### III. ARGUMENT

#### A. Nirvana's negligence claims fail because contract-based duties do not give rise to separate tort duties.

Nirvana asserts claims for negligence and gross negligence essentially alleging that ADT breached a common-law duty when it breached the duties it owed under the parties' "Agreement". *See id.* at ¶¶ 106, 115. But no common-law duty exists that requires ADT to install and monitor an alarm that detects burglaries and sends signals to its central station. That duty only arises from a contract. Indeed, in a recent decision involving facts similar to those alleged here, this Court held likewise. *See Vigilant Ins. Co. v. ADT,* No. 10 Civ. 3066, 2011 WL 855874 (S.D.N.Y. Mar. 9, 2011).

In *Vigilant*, plaintiff's insured ("Rohatyn") contractually agreed that ADT would install and monitor an alarm system in Rohatyn's residence. *Id.,* at *1. Later, a fire occurred at Rohaytn's residence and ADT's alarm system failed to send a signal to the central station. *Id.* As a result, plaintiff asserted causes of action against ADT for breach of contract, breach of warranty, and gross negligence. *Id.* The Court granted ADT's motion to dismiss plaintiff's gross-negligence claim because ADT owed Rohatyn a contractual duty, not a tort-based one: "ADT's obligation to install, monitor, maintain, and test the alarm system arose only under the Contract. Simply put, ADT did not owe Rohatyn an independent duty to perform its contractual obligations with care and skill. Thus, Plaintiff's allegations of tortious conduct fail to allege the necessary violation of a legal duty independent of the contract with defendant." *Id.,* at *3 (citing *Clemens Realty, LLC v. N.Y. City Dep't of Educ.,* 850 N.Y.S.2d 172, 173, 47 A.D.3d 666, 667

(N.Y. App. Div. 2008) ("Simply alleging a duty of due care does not transform a breach of contract action into a tort claim.")).

New York state courts similarly refuse to entertain tort-based claims premised on a party's failure to perform purely contractual obligations: "[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract[.]" *Clemens*, 850 N.Y.S.2d at 173, 47 A.D.3d at 667; *see also Sargent v. N.Y. Daily News, L.P.*, 840 N.Y.S.2d 101, 103, 42 A.D.3d 491, 493 (N.Y. App. Div. 2007); *Brown v. Wyckoff Hgts. Med. Ctr.*, 811 N.Y.S.2d 570, 571 (N.Y. App. Div. 2006); *Old Republic Nat'l Title. Ins. Co. v. Cardinal Abstract Corp.*, 790 N.Y.S.2d 143, 145, 14 A.D.3d 678, 680 (N.Y. App. Div. 2005).

Like Rohatyn, Nirvana had a contractual relationship with ADT. ADT's duties to install and monitor the alarm system were therefore obligations that arose under the "Agreement"[3], and any liability on the part of ADT for that service was, at most, a breach of the "Agreement". *See Clemens*, 850 N.Y.S.2d at 173. Because there is no independent, non-contractual duty that could give rise to a tort cause of action, the Court should dismiss Nirvana's negligence and gross-negligence claims with prejudice.

### B. Nirvana's "Forgery/Fraud" claim fails because forgery is not an independent cause of action and Nirvana failed to adequately plead reliance.

The Court should dismiss Nirvana's forgery claim with prejudice because New York does not recognize an independent cause of action for forgery. *See Luckett v. Bure*, 290 F.3d

---

[3] As argued below in Section III.C., the Small Business Contract applies and governs the parties' contractual duties. Regardless of whether the "Agreement" or Small Business Contract governs, both of those purported agreements note that ADT contractually agreed to install and monitor security equipment at Nirvana's premises. As a result, Nirvana's negligence claims fail under either scenario for the reasons given above – specifically, that tort-based claims premised on a failure to perform contractual duties must fail.

493, 497 (2d Cir. 2002) (affirming dismissal of civil forgery claim because forgery is a crime and not a private cause of action under New York law); *Miller v. New York City Health & Hosp. Corp.* No. 00-civ-140, 2005 WL 2022016, at *7 (S.D.N.Y. Aug. 22, 2005), *aff'd*, 198 F. App'x 87 (2d Cir. 2006) ("liberally interpreting" plaintiff's forgery claim as one for fraud because New York does not recognize an independent cause of action for forgery).

To the extent Nirvana alleges a fraud claim, the Court should dismiss it because Nirvana failed to adequately plead reliance. Fraud requires a material misrepresentation of fact, knowledge of its falsity, intent to induce reliance, justifiable reliance by the plaintiff, and damages. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). Because reliance is a necessary element of a fraud claim, "it is insufficient for a fraud plaintiff to show merely that some chain of events beginning with a false statement by defendants led to his injury." *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 775 (S.D.N.Y. 2011) (quoting *Schuh v. Druckman & Sinel, LLP*, No. 07 Civ. 366, 2008 WL 542504, at *10 (S.D.N.Y. Feb. 29, 2008)). And as the Court has noted, courts dismiss fraud claims when plaintiffs fail to consult readily available information to ascertain the truth of a representation:

> Most cases where courts have granted motions to dismiss because of a failure to adequately plead reasonable reliance have concerned situations where a plaintiff failed to examine readily available information, relied on oral representations of information when it could easily have asked for additional information, or failed to properly investigate a transaction.

*Amusement Indus., Inc.*, 786 F. Supp. 2d at 775 (quoting *Gildepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 459 (S.D.N.Y. 2007)).

Nirvana alleges that ADT committed fraud in producing ADT's version of the Contract with a Nirvana representative's forged signature on the Terms and Conditions page. Am. Compl. ¶¶ 119-22 (Doc. 10). As a result of ADT's alleged forgery, Nirvana contends that it

suffered damages in the form of costs it incurred in "addressing these forgeries, including legal fees relating to the forgeries and all monies paid to the Lesnevich Firm for the analysis of same." *Id.* at ¶ 121.

Nowhere does Nirvana allege that it relied on ADT's statements. Nor can it because Nirvana consulted its Customer Copy of the Small Business Contract to determine if its representative signed page six and, as Nirvana concedes, it retained a forensic document analyst to determine the validity of the alleged forgeries. *Id.* at ¶¶ 91, 121. Thus, Nirvana "examined readily available information" to determine whether ADT's statements constituted misrepresentations. As a result, Nirvana did not rely on ADT's alleged misrepresentations; to the contrary, Nirvana apparently disputed them from the beginning and incurred costs to prove the representation's falsity. *Id.* at ¶ 91 (noting that "shortly after" ADT provided the Central Storage Copy of the Agreement, Nirvana retained forensic document analysts).

Essentially, Nirvana alleges that a false statement required Nirvana to spend money to disprove it. Those allegations do not constitute a fraud claim. *See Amusement Indus., Inc.*, 786 F. Supp. 2d at 775. Because Nirvana did not adequately plead a fraud claim in its original and Amended Complaints and, more importantly, it cannot plead any set of facts surrounding the alleged forgery to satisfy fraud's elements, the Court should dismiss Nirvana's fraud claim with prejudice.

### C. Nirvana's breach-of-contract claim fails to the extent Nirvana's requested relief exceeds $1,000.

Nirvana alleges that the first three pages of the Small Business Contract constitute the "Agreement" because Nirvana did not agree to the Terms and Conditions on pages four through six; as a result, clauses limiting ADT's liability on pages four through six do not apply. *See id.* at ¶¶ 38-44. Notwithstanding Nirvana's allegations regarding the "Agreement", the Small Business

Contract's Terms and Conditions apply and limit Nirvana's recoverable damages because Nirvana knew of and read the Terms and Conditions, failed to timely communicate its alleged rejection to ADT, and accepted ADT's security equipment and monitoring services.

> 1. **Nirvana accepted the Small Business Contract in its entirety because it received the benefit of that contract and failed to timely communicate to ADT its alleged rejection of certain contractual terms.**

Nirvana alleges that it knew of and read the Small Business Contract's Terms and Conditions. *Id.* at ¶ 41. Nirvana therefore knew that under the Terms and Conditions, ADT offered a low, monthly monitoring fee in exchange for Nirvana's agreement to (1) not consider ADT an insurer of Nirvana's property and (2) limit Nirvana's recoverable damages to $1,000. Small Business Contract at p. 6, ¶ E (Exs. A, B to Am. Compl.) ("**ADT IS NOT AN INSURER. THE AMOUNTS ADT CHARGES CUSTOMER . . . ARE BASED UPON THE VALUE OF THE SERVICES, SYSTEM AND EQUIPMENT ADT PROVIDES AND ARE UNRELATED TO THE VALUE OF CUSTOMER'S PROPERTY . . . .**"; "**[ADT'S] LIABILITY SHALL BE LIMITED TO . . . $1,000 . . . AS CUSTOMER'S SOLE REMEDY.**").

Nirvana alleges that it did not agree to the Terms and Conditions. *See* Am. Compl. ¶ 41 (Doc. 10). But notably, Nirvana does not allege in its original and Amended Complaints that Nirvana ever timely communicated to ADT its rejection of the Small Business Contract's Terms and Conditions. Rather than communicating its rejection, Nirvana alleges that it permitted ADT to install and monitor security equipment in Nirvana's jewelry store and began paying ADT the low, monthly monitoring fee. *Id.* at ¶¶ 31, 45-47. Indeed, under Nirvana's allegations, ADT first learned that Nirvana had apparently rejected the Terms and Conditions *only after* ADT installed and began monitoring the security equipment, *after* Nirvana began paying ADT the monthly

monitoring fee, *after* the burglary, and *after* ADT's counsel told Nirvana's counsel that the Terms and Conditions limited Nirvana's recoverable damages. *Id.* at ¶¶ 41, 78-90.

Fundamental contract law precludes Nirvana from keeping mum on its rejection of the Terms and Conditions and taking the contractual benefits while simultaneously discarding the burdens. Interpreting New York law, the Second Circuit has noted that "it is *standard contract doctrine* that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) (emphasis added) (citing Restatement (Second) of Contracts § 69(1)(a) (1981) ("[S]ilence and inaction operate as an acceptance . . . [w]here an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.")).

The Southern District of New York applied this doctrine in *Filanto v. Chilewich Int'l Corp.*, 789 F. Supp. 1229 (S.D.N.Y. 1992). There, the Court found that Filanto accepted a contractual provision requiring the parties to arbitrate in Russia because there was "simply no satisfactory explanation as to why Filanto failed to object to the incorporation by reference of the Russian Contract in a timely fashion." *Id.* at 1240. Reciting a scenario identical to the one that occurred here, the Court noted that "An offeree who, knowing that the offeror has commenced performance, fails to notify the offerror of its objection to the terms of the contract within a reasonable time will, under certain circumstances, be deemed to have assented to those terms." *Id.*

To illustrate this doctrine, the Second Circuit provided a helpful hypothetical of this doctrine by simplifying the fact pattern to selling apples at a fruit stand:

> [A] visitor, who sees apples offered for 50 cents apiece and takes an apple, owes 50 cents, regardless whether he did or did not say, "I agree." The choice offered in such circumstances is to take the apple on the known terms of the offer or not to take the apple. As we see it, the defendant in *Ticketmaster* and Verio in this case had a similar choice. Each was offered access to information subject to terms of which they were well aware. Their choice was either to accept the offer of contract, taking the information subject to the terms of the offer, or, if the terms were not acceptable, to decline to take the benefits.

*Verio*, 356 F.3d at 403.

Applying the Second Circuit's hypothetical to the facts here, Nirvana saw the sign offering apples for 50 cents and took an apple; it therefore accepted the contractual terms regarding the apple's sale. *See* Am. Compl. ¶¶ 41, 45-47 (alleging that Nirvana reviewed the Terms and Conditions and allowed ADT to install and monitor security equipment on Nirvana's premises) (Doc. 10). In other words, Nirvana accepted the Small Business Contract in its entirety because Nirvana (1) knew of and read the Terms and Conditions, (2) failed to timely communicate to ADT its rejection of the Terms and Conditions, and (3) accepted ADT's security equipment and monitoring services. It must follow that the Terms and Conditions' limitation-of-liability clause applies and, as discussed below, limits Nirvana's claims.

### 2. Because the Terms and Conditions apply, they limit Nirvana's recoverable damages.

Because Nirvana accepted the Small Business Contract by failing to timely reject the Terms and Conditions and accepting the benefits, the Terms and Conditions limit Nirvana's recoverable damages to $1,000. Indeed, section E of the Small Business Contract contains the following limitation-of-damages clause:

> **IF NOTWITHSTANDING THE PROVISIONS OF THIS SECTION E, ADT IS FOUND LIABLE FOR LOSS, DAMAGE OR INJURY UNDER ANY LEGAL THEORY DUE TO A FAILURE OF THE SERVICES, SYSTEM OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHOEVER IS GREATER, AS AGREED UPON**

DAMAGES AND NOT AS A PENALTY, AS CUSTOMER'S SOLE REMEDY.

Small Business Contract at p. 6, ¶ E (emphasis in original) (Exs. A, B to Am. Compl.).

New York appellate courts consistently enforce limitation-of-damages clauses. *See, e.g., Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 553-54 (1992) (noting that "we have previously upheld contractual language in an alarm contract limiting the customer's damages to $50); *Florence v Merchants Cent. Alarm Co. Inc.*, 51 N.Y.2d 793 (1980). Because, as noted above, Nirvana accepted the Small Business Contract in its entirety, the limitation-of-damages clause applies and limits Nirvana's recoverable damages. The Court should therefore dismiss all portions of Nirvana's Complaint seeking damages that exceed $1,000. *See Children's Surgical Found., Inc. v. Nat'l Data Corp.*, 121 F. Supp. 2d 1221, 1223 (N.D. Ill. 2000) (granting defendant's motion for partial dismissal pursuant to Federal Rule 12(b)(6) to the extent it sought to limit plaintiff's damages claim to the amount in the limitation-of-damages clause).

## IV.   CONCLUSION

Nirvana's Complaint should be dismissed in its entirety for three reasons:

- First, Nirvana's negligence and gross-negligence claims fail because ADT has no common-law duty to install and monitor security equipment.

- Second, Nirvana's "forgery/fraud" claim fails because New York does not recognize an independent cause of action for forgery. Nirvana's fraud claim fails because Nirvana did not rely on ADT's alleged misrepresentation.

- Third, Nirvana accepted the Small Business Contract in its entirety because it knew of and read the Terms and Conditions, failed to timely communicate its alleged rejection to ADT, and accepted ADT's goods and services. The Terms and Conditions accordingly apply and limit Nirvana's recoverable damages to $1,000.

ADT therefore requests that the Court dismiss Nirvana's negligence, gross-negligence, and "forgery/fraud" claims with prejudice and limit Nirvana's recoverable damages to the contractually agreed-upon amount.

Dated: White Plains, New York
       January 24, 2012

Respectfully submitted,

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

*(signature)*

Thomas M. DeMicco (TD 5037)
3 Gannett Drive
White Plains, NY 10604-3407
Telephone: 914-323-7000
Facsimile: 914-323-7001
thomas.demicco@wilsonelser.com

***Attorneys for Defendant***
***ADT Security Services, Inc.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this memorandum was served via US Mail and CM/ECF filing on January 24, 2012 to:

Steven A. Berger
Jonathan Rogin
BERGER & WEBB, LLP
7 Times Square, 27th Floor
New York, NY 10036
Telephone:   212-319-1900
Facsimile:   212-319-2017
sberger@bergerwebb.com
jrogin@bergerwebb.com

*Attorneys for Plaintiff*
*Nirvana International, Inc.*

_____
Thomas M. DeMicco (TD 5037)

4858001 v1
3819560.1

16